UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

W. Kelley Jackson,

    Plaintiff,

v.                                                    Civil No. 08-398 (JNE/JJG)
                                                       ORDER

Lakewinds Natural Foods,

    Defendant.

---

Marshall H. Tanick, Esq., and Jean B. Roth, Esq., Mansfield, Tanick & Cohen, P.A., appeared for Plaintiff W. Kelley Jackson.

Malcolm P. Terry, Esq., Messerli & Kramer P.A., appeared for Defendant Lakewinds Natural Foods.

---

W. Kelley Jackson brings this action against Lakewinds Natural Foods (Lakewinds), his former employer. Jackson alleges that he was demoted because of his gender in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the Minnesota Human Rights Act (MHRA), and he alleges that he was terminated because of his age in violation of the Age Discrimination in Employment Act (ADEA) and the MHRA. Lakewinds asserts state-law counterclaims for malicious prosecution and abuse of process. The case is before the Court on Lakewinds' Motion for Summary Judgment on Jackson's discrimination claims and Jackson's Motion for Summary Judgment on Lakewinds' counterclaims. For the reasons discussed below, the Court dismisses Jackson's claims with prejudice and Lakewinds' counterclaims without prejudice.

## I.     BACKGROUND

Lakewinds is a member-owned cooperative grocery store chain. Lakewinds began business with a single store in Minnetonka, Minnesota. Over time, the Minnetonka store

changed locations and expanded, and Lakewinds opened stores in Anoka, Minnesota, and Chanhassen, Minnesota, in the summer of 2003 and December 2005, respectively. Operations at each store are divided into several different administrative departments, such as a grocery department and a produce department. Prior to August 2007, each store typically had a manager for each department, and each store had its own Store Manager, who supervised general store operations. Lakewinds also has a single General Manager, who has ultimate supervisory authority over all three stores.

Jackson, a member of the cooperative and a regular customer at the Lakewinds Minnetonka store, was hired to work as a stocker in the grocery department of the Minnetonka store in 1997. Over time, Jackson, while still working as a stocker, picked up additional duties. For example, according to his deposition testimony, Jackson was swiftly promoted to bread manager within the grocery department and eventually began to operate in a store-manager-type role on Sundays, when Jackson was frequently one of the few senior employees working. On August 21, 2005, Lakewinds promoted Jackson to Grocery Department Manager for the Minnetonka store. In his deposition, Jackson further claimed that he began performing the duties of Store Manager for the Minnetonka store in either 2006 or 2007, though he admitted that he was never formally promoted to Store Manager and that other individuals held the title of Store Manager during this period.[1]

In August 2007, Lakewinds reconfigured its management structure. Among other things, some of the department manager positions at the Minnetonka and Chanhassen stores were consolidated, creating multi-store department manager positions. For example, after

---

[1] The evidence in the record is contradictory with respect to the progression of positions held by Jackson. For present purposes, the Court assumes that Jackson's account of his work history at Lakewinds is accurate.

restructuring, authority over the grocery departments in both the Minnetonka and Chanhassen stores was vested in a single multi-store Grocery Department Manager. In addition, the Store Manager positions for the Minnetonka and Chanhassen stores were similarly consolidated into a single multi-store Store Operations Manager Position.

On August 17, 2007, the day the changes in management structure went into effect, Jackson was informed that he was being demoted to a stocker position with additional duties as a bread manager and frozen food buyer. Jackson's benefits and pay did not change, though his work schedule was altered. Dwight Gaddis, a 45-year-old black male who formerly served as a Front End Manager, became the Grocery Department Manager for the Minnetonka and Chanhassen stores. A man named Ryan Taylor became the multi-store Produce Department Manager. A woman named Karen Hjelden became the multi-store Wellness Department Manager. Penni Ruben, a woman who had already been acting as Store Manager for both the Minnetonka and Chanhassen stores, filled the multi-store Store Operations Manager position. Libby Trader, a woman who began working as General Manager in June 2007, remained General Manager. A woman named Cece Helspar, who had previously been a Front End Manager, took a new position called "store lead" at the Minnetonka store.[2]

After his demotion, Jackson spent several days helping Gaddis assume the Grocery Department Manager duties at the Minnetonka store, and Jackson then left on August 24, 2007, for a vacation that he had previously planned. When he returned on September 10, 2007, Jackson, then age 53, was terminated. Jackson was replaced as bread manager and frozen food

---

[2] The relationship between the new store lead positions, the new multi-store Store Operations Manager position, the old Front End Manager positions, and the old Store Manager positions is unclear. Understanding that relationship, however, is not necessary to resolution of the motions presently before the Court.

buyer by 26-year-old Jim Oberg, whom Jackson testified was the only subordinate employee in the department who was capable of taking over Jackson's duties.

Lakewinds asserts a variety of justifications for Jackson's demotion, including a negative job-performance evaluation of Jackson in August 2007, complaints about Jackson's alleged unwillingness to enforce store policies and to discipline employees he supervised, and a confrontation in July 2007 between Jackson and Ruben involving a disagreement about the bread display. Lakewinds contends that, between the time of Jackson's demotion and his termination, it was revealed that Jackson had failed to properly seek refunds for damaged or otherwise defective product shipments during his time as Grocery Department Manager. Lakewinds further claims that Jackson left work without permission on August 24, 2007.

With respect to Lakewinds' asserted justifications for his demotion and termination, Jackson admits he was given a poor performance evaluation and that a variety of performance-related issues were called to his attention before his demotion, but he contends that any negative conclusions about his work or his attitude were unwarranted. He admitted, in his deposition testimony, that he was involved in some sort of "confrontation" related to the bread display, but he disputes Lakewinds' characterization of the incident. In his deposition testimony, he further admitted he left work early—at 9:07 a.m.—on August 24, 2007, but he claims it was appropriate because he had previously made arrangements with his supervisor to leave at 11:00 a.m. Jackson claims that he first learned of Lakewinds' allegations regarding refunds for defective product shipments during the course of this litigation.[3]

---

[3] Lakewinds has also indicated that it took adverse action against Jackson because he discussed his negative performance evaluation with other employees despite Lakewinds' command that he not do so. Jackson contends that Lakewinds' command was "probably illegal" under federal labor law. *See* 29 U.S.C. § 157 (2006) ("Employees shall have the right to . . . engage in . . . concerted activities for the purpose of . . . mutual aid or protection."). *But see id.* §

4

On February 18, 2008, Jackson filed this lawsuit, alleging age and gender discrimination. He contends that, since he had previously served as de facto Store Manager, he should have been given the store lead position at the Minnetonka store, and he claims that gender discrimination is the reason that the position went instead to Helspar. Jackson contends he was terminated and replaced by Oberg for reasons of age discrimination. He cites Gaddis's appointment to the multi-store Grocery Department Manger position as additional support for his age discrimination claim.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the nonmovant must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is

---

152(3) ("The term 'employee' . . . shall not include . . . any individual employed as a supervisor."); *id.* § 152(11) ("The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."). Even if Lakewinds' command to Jackson was illegal, the command is not evidence of age or gender discrimination, and consideration of Lakewinds' command and Jackson's alleged disobedience is not necessary to resolve this case.

appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.     Jackson's claims**

Jackson asserts that Lakewinds discriminated against him on the basis of his age and gender in violation of Title VII, the ADEA, and the MHRA. Title VII provides that it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a) (2006). The ADEA states that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a) (2006). The MHRA states that "it is an unfair employment practice for an employer, because of . . . sex . . . or age to . . . discharge an employee" or "discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn. Stat. § 363A.08, subd. 2 (2008).

The Court analyzes Jackson's MHRA, ADEA, and Title VII claims using the same framework. *See Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006); *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 502 (8th Cir. 2005). Accordingly, Jackson may avoid summary judgment by "creating the requisite inference of unlawful discrimination" under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).[4]

---

[4]     The Supreme Court recently clarified that the burden-shifting framework described in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 278-79 (1989) does not apply in mixed-motive discrimination cases under the ADEA, unlike cases brought under Title VII, and that plaintiffs in such cases always retain the burden of proving but-for causation. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351-52 (2009). However, in *Gross*, the Supreme Court noted that it "has

6

*Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. To make a prima facie case of discrimination, a plaintiff must show that he was a member of a protected class when he was terminated or demoted, that he was otherwise qualified for the position from which he was removed when terminated or demoted, that the defendant terminated or demoted him, and that his termination or demotion occurred under circumstances giving rise to an inference of unlawful discrimination. *See Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008). "[O]nce the plaintiff employee establishes a prima facie case of discrimination, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its actions." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 914 (8th Cir. 2007). If the defendant offers a legitimate, nondiscriminatory reason, "the burden shifts back to the plaintiff to put forth evidence showing the defendant's proffered explanation is a pretext for unlawful discrimination." *Id.*[5]

Jackson contends that summary judgment on his discrimination claims should be denied because the evidence establishes that a pattern or culture of age and gender discrimination existed at Lakewinds. Jackson further asserts that, as a result, it can reasonably be inferred that

---

not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green* . . . utilized in Title VII cases is appropriate in the ADEA context." *Id.* at 2349 n.2. Because the Eighth Circuit has applied the *McDonnell Douglas* framework in the ADEA context, *see, e.g.*, *Loeb v. Best Buy Co.*, 537 F.3d 867, 872 (8th Cir. 2008), and because, in their memoranda, the parties analyze Jackson's ADEA claim using the *McDonnell Douglas* framework, the Court applies the *McDonnell Douglas* framework to Jackson's ADEA claim.

5     Because the Minnetonka and Chanhassen Grocery Department Manager positions were consolidated into a single position, Jackson's demotion back to stocker could conceivably be characterized as arising out of a reduction in force. Here, neither party suggests that the Court treat Jackson's case as a reduction-in-force case. *Cf. Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855-56 (8th Cir. 2003) (indicating that a plaintiff's burden is higher in a reduction-in-force case).

his demotion and termination were the product of unlawful discrimination. *Cf. Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) ("[D]iscriminatory motive . . . can in some situations be inferred from the mere fact of differences in treatment."); *Morgan v. United Parcel Serv. of Am., Inc.*, 380 F.3d 459, 463-64 (8th Cir. 2004) ("To be legally sufficient, the [class] plaintiffs' statistical evidence must show a disparity of treatment, eliminate the most common nondiscriminatory explanations of the disparity, and thus permit the inference that, absent other explanation, the disparity more likely than not resulted from illegal discrimination." (quotation marks omitted)); *Veliz v. City of Minneapolis*, Civ. No. 07-2376, 2008 WL 2622966, at *8 (D. Minn. July 2, 2008) (noting affidavits attesting to a "culture of discrimination and retaliation").

The Court disagrees. Even if it is assumed that Jackson has established prima facie cases of age and gender discrimination, Lakewinds has articulated legitimate, nondiscriminatory reasons for his demotion and termination, which are described above. Jackson disputes the factual bases of Lakewinds' asserted justifications and questions the wisdom of Lakewinds' decisions to demote and terminate him. However, establishing that an employer's decisions were unwise or that its reasons for an adverse action were based on an erroneous interpretation of an employee's actions or on facts that are reasonably disputed does prove that the employer's asserted reasons are pretextual. *See McKay v. U.S. Dep't of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003) ("[The] inquiry is limited to whether the employer gave an honest explanation of its behavior, not whether its action was wise, fair or correct." (quotation marks omitted)). Here, Jackson fails to produce evidence that would permit a reasonable jury to conclude that Lakewinds' asserted reasons are dishonest or pretextual.

In addition, Jackson fails to establish a basis on which a jury could conclude that either unlawful age or gender discrimination was the real reason for either his demotion or termination. *See Riser v. Target Corp.*, 458 F.3d 817, 820-21 (8th Cir. 2006) (indicating that a court should not lose sight of the "ultimate question of discrimination vel non" (quotation marks omitted)). Indeed, Jackson presents little evidence of unlawful discrimination of any sort. Jackson's primary evidence of gender discrimination consists of the facts that he is male, that Ruben and other managers are female, and that Helspar, a female, became store lead in Minnetonka rather than Jackson. Similarly, Jackson's primary evidence of age discrimination consists of the facts that he was demoted and then fired when he was 53 years old; that Gaddis, then age 45, became the multi-store Grocery Department Manager; and that after termination Jackson was replaced by Oberg, who was then 26 years old. While the genders of the individuals who made the decisions to demote and fire him and the genders and ages of the employees who replaced him may be relevant to his claims, such factors are insufficient to permit a reasonable jury to find in Jackson's favor. *See Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003) ("Without more . . . the fact that Nelson was younger than Pottenger does not create a triable issue of pretext."); *Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 767 (D.C. Cir. 2002) ("The Teamsters' decision to replace her with a younger woman is insufficient for a jury to conclude that she lost out *because of [her] age*." (quotation marks omitted)); *Iadimarco v. Runyon*, 190 F.3d 151, 156 (3d Cir. 1999) (stating, in a reverse gender discrimination case, that "[a]lthough the race and/or gender of the individual(s) responsible for a hiring decision is certainly relevant, it is insufficient to establish a prima facie case of discrimination without more"); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998) ("While Cianci also points to her replacement

by a male as evidence of gender discrimination, this is simply insufficient to demonstrate that Cianci's gender motivated the decision to terminate her.").

To further support his claims, Jackson submits affidavits of various employees and former employees of Lakewinds. Many of the claims in these affidavits regarding age or gender discrimination against Jackson and others employed at Lakewinds constitute bald statements of opinion. For example, the affidavit of Paris Kaye, Jackson's former co-worker, states that "[a]ge, seniority and sex seemed to play a role in the treatment, demotion, and discharge of Mr. Jackson and other employees who met that same fate" and that she "believe[s] Kelley Jackson was demoted, and later discharged from his job with Lakewinds because of his age and seniority, and very likely also because of his sex." Similarly, the affidavit of Ryan Schneider, a former Lakewinds employee, states that he "believe[d] that men were treated differently than women in middle management positions at Lakewinds, to the detriment to the male employees, and that men were demoted from higher management positions because of their sex." Standing alone, such statements of opinion are insufficient to create a genuine issue of material fact. *See Bradford v. Norfolk S. Corp.*, 54 F.3d 1412, 1421 (8th Cir. 1995) ("[The] personal opinion [of the plaintiff's co-worker], without more, is insufficient to allow a reasonable jury to infer discrimination on the part of Norfolk Southern."); *Morgan v. Ark. Gazette*, 897 F.2d 945, 950 (8th Cir. 1990) ("[I]ndividual employees' opinions of actions taken by their employer . . . in themselves, are insufficient to support Morgan's argument that his age was a determining factor in his discharge.").

Jackson asks the Court to consider a specific instance, described in Kaye's affidavit, of alleged discrimination against male applicants for an open position in the produce department of Lakewinds' Minnetonka store. However, the account of the incident in Kaye's affidavit consists

of multiple levels of inadmissible hearsay. In addition, while Lakewinds submitted affidavits that admit that Lakewinds' Human Resources Manager "made mention . . . that we should consider any qualified female applicants for purposes of continued diversity within the coop," those affidavits also establish that the position in question was in fact offered to a male applicant. Finally, the record does not indicate when the alleged incident took place or how it was related to Jackson, the positions he held at Lakewinds, or any decision to demote or terminate him. *See Ramirez v. Gencorp, Inc.*, 196 F. App'x 438, 441 (8th Cir. 2006) ("Given the evidence presented by GDX regarding Ramirez's poor job performance, the remarks made by Mills outside of the decisional process are insufficient without more to generate a genuine issue of fact on the question of pretext.").

To the extent that Jackson purports to identify other instances of alleged discrimination against other male employees and other older employees, Jackson fails to provide suffcient details to determine whether other Lakewinds employees were actually subjected to discrimination and, if so, whether their situations were sufficiently akin to Jackson's so as to be relevant to his claims. *See Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004) ("Mere allegations not supported with specific facts are insufficient to establish a material issue of fact and will not withstand a summary judgment motion."). The Court provides the following examples:

- Kaye's affidavit states that she "saw many older employees being treated worse than younger employees, and pressured to quit their jobs, demoted or fired for no apparent reason other than their age or seniority."

- Kaye's affidavit states that Jeff Grimm, a male employee over the age of 50, was injured on the job and that, when he returned to work, he was placed in a

different position that he finds less desirable. The affidavit further states that Lakewinds has not permitted Grimm to return to the position he previously held.[6]

- Jackson's affidavit states that "[f]our men in managerial positions left for unknown reasons: General Manager John Case, Human Resources Manager Scott McKell, Store Manager Steven Culhane and Marketing Director Doug Roese." In his deposition, Jackson identified Marty McBride as another man who departed Lakewinds for reasons unknown to Jackson.

- Jackson, in his deposition, stated that Schneider and Mike Hjelden, both younger men, were terminated or otherwise left employment with Lakewinds for reasons of gender discrimination. However, in support of these allegations, Jackson indentified only their beliefs that they had been discriminated against and some purported communications problems with Ruben.

- Jackson, in his deposition, stated his belief that Margaret Collins, Barb Beito, Lisa Gibbs, Connie Guillet, Jennifer Kraemer, and Victoria Glover were discriminated against as older employees. However, Jackson fails to cite any specific evidence of age discrimination.[7] In his affidavit, Jackson further identifies Kate Schoch and Ed Hokenson as older employees who were replaced by younger employees but fails to provide any other relevant details.

Statements in Schneider's affidavit purportedly identifying gender-based animus against Jackson himself are similarly devoid of detail: Schneider's affidavit states that while certain female employees were permitted to swear, "express emotion," and "vent their feelings" in managers' meetings, Jackson was punished for making constructive comments without swearing but with

---

[6] Grimm's affidavit, submitted by Lakewinds, indicates that, when he returned to work following his injury, Grimm was temporarily limited to light duty work conditions. The affidavit further states that, while the position held by Grimm before his injury was restructured, Grimm returned to a roughly comparable position in November 2008.

[7] In her affidavit, Collins, a 42-year-old woman, states that she was demoted in 2007, promoted later in 2007, and then fired in February 2008. However, Collins's affidavit does not indicate that she was subjected to age discrimination. In her affidavit, Beito, states that she "was 42 years old when Penni Ruben began to target [her] for poor treatment," but her affidavit does not indicate whether and, if so, why she believes such treatment was due to age discrimination. In her affidavit, Gibbs states that she "left [her] position with Lakewinds . . . due to the chaotic management situation, and to spend more time at home." Grover, in her affidavit, indicates that she left Lakewinds because she disapproved of Ruben's practice of favoring certain employees, which Grover believed included younger employees, but Grover did not indicate that she personally had been subjected to discrimination.

acceptable expression of "emotions." Without additional information, the significance of these alleged instances of discrimination is unclear, and, to the extent that Jackson and his affiants specifically attribute Lakewinds' actions to unlawful discrimination, their allegations are no better than statements of opinion. *Cf. Girten v. McRentals, Inc.*, 337 F.3d 979, 982 (8th Cir. 2003) ("Because this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment."); *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003) ("Evidence, not contentions, avoids summary judgment.").

Finally, Jackson's efforts to prove a pattern of discrimination are undermined by his attempts to prove both age and gender discrimination. Various affidavits and Jackson's own deposition testimony describe both younger and older employees being subjected to both favorable and unfavorable treatment. The same is true for both male and female employees. The Court is unable to discern anything resembling a pattern of gender or age discrimination. Instead, the pattern most apparent to the Court is one of personality conflicts between certain members of Lakewinds' management and certain other Lakewinds employees. *Cf. Rose-Maston v. NME Hosp., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) ("[Title VII] does not prohibit employment decisions based on . . . personality conflicts . . . ."). Accordingly, no genuine issue of material fact remains as to whether intentional discrimination of any kind was responsible for Jackson's termination or demotion, and Lakewinds is entitled to summary judgment on Jackson's discrimination claims.

**B.     Lakewinds' counterclaims**

Lakewinds' counterclaims against Jackson are state-law claims. The basis for the Court's jurisdiction over these counterclaims is 28 U.S.C. § 1367(a) (2006), which permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or

controversy as the claims that fall within the district court's original jurisdiction. A district court may, in its discretion, decline to exercise supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed. *Id.* § 1367(c)(3); *see Franklin v. Zain*, 152 F.3d 783, 786 (8th Cir. 1998) (holding district court did not abuse its discretion in declining to exercise supplemental jurisdiction over state-law claim pursuant to section 1367(c)(3)). In this case, Lakewinds is entitled to summary judgment on Jackson's claims, which include the only claims in this action that fall within the Court's original jurisdiction. Moreover, Lakewinds' counterclaim for malicious prosecution is before the Court only because it was asserted before it was ripe. *See Jordan v. Lamb*, 392 N.W.2d 607, 608 (Minn. Ct. App. 1986) ("[A] suit for malicious prosecution cannot be maintained until the termination of the prior litigation . . . ."). The Court declines to exercise supplemental jurisdiction over, and therefore dismisses without prejudice, Lakewinds' state-law counterclaims.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Lakewinds' Motion for Summary Judgment [Docket No. 21] is GRANTED.

2. Jackson's Motion for Summary Judgment [Docket No. 41] is DENIED.

3. The Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

4. Lakewinds' counterclaims are DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 28, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge